```
                  IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF COLUMBIA
      - - - - - - - - - - - - - - - x
      UNITED STATES OF AMERICA          CR No. 1:22-cr-00414-JEB-1

      v.                                Washington, D.C.
                                        Wednesday, May 17, 2023
      ANDREW JOHNSON,                    11:00 a.m.

                    Defendant.
      - - - - - - - - - - - - - - - x
      _____

                    TRANSCRIPT OF STATUS CONFERENCE
             HELD BEFORE THE HONORABLE JAMES E. BOASBERG
                      UNITED STATES DISTRICT JUDGE
      _____

      APPEARANCES VIA VIDEOCONFERENCE:

      For the United States:    Madison Mumma, Esq.
                                Douglas S. Meisel, Esq.
                                DOJ-OSC
                                United States Attorney's Office
                                1301 New York Avenue, NW
                                Suite 1000
                                Washington, DC 20530
                                (202) 913-4794

      For the Defendant:        David A. Howard, Esq.
                                DAVID A. HOWARD, P.A
                                25 S.E. 2nd Ave.
                                Suite 1105
                                Miami, FL 33131
                                (786) 360-6056

      Court Reporter:           Timothy R. Miller, RPR, CRR, NJ-CCR
                                Official Court Reporter
                                U.S. Courthouse, Room 6722
                                333 Constitution Avenue, NW
                                Washington, DC 20001
                                (202) 354-3111




      Proceedings recorded by machine shorthand; transcript
      produced by computer-aided transcription.
```

1                      **P R O C E E D I N G S**

2              THE COURT:  Okay.  Good morning.  Do we have

3     everybody?

4              THE DEPUTY CLERK:  Yes, except for -- I'm waiting

5     for confirmation from someone with Pretrial Services, but

6     everyone else is here.

7              THE COURT:  Okay.  All right.  We can wait a

8     minute for that.

9              (Brief pause.)

10             THE DEPUTY CLERK:  Your Honor, the secretary in

11    Pretrial Services is going to see if they can get someone to

12    come on.

13             THE COURT:  Okay.

14             (Brief pause.)

15             THE DEPUTY CLERK:  Ms. Spriggs is coming now, Your

16    Honor.

17             THE COURT:  Okay.  Great.

18             (Brief pause.)

19             THE DEPUTY CLERK:  Good morning.  Ms. Spriggs, can

20    you hear us okay?

21             THE PROBATION OFFICER:  Good morning.  Yes, I can

22    hear you.

23             THE DEPUTY CLERK:  All right.  Thank you.

24             All right.  We're here today for a status hearing

25    in 22-414, the United States of America v. Andrew Johnson.

 1          Beginning with counsel for the Government, please

 2     state your name for the record.

 3               MS. MUMMA:  Madison Mumma for the United States.

 4               MR. MEISEL:  And Doug Meisel for the United

 5     States.  Good morning, Your Honor.

 6               THE COURT:  Good morning to both of you.

 7               MS. MUMMA:  Good morning.

 8               MR. HOWARD:  Good morning, Your Honor.  David

 9     Howard on behalf of Mr. Johnson who's present on the Zoom.

10               THE COURT:  Thank you, Mr. Howard.

11               Mr. Johnson, can you see and hear me okay?

12               THE DEFENDANT:  Yes, Your Honor.

13               THE COURT:  All right, then.  Ms. Spriggs, I'll

14     have you state your appearance.

15               THE PROBATION OFFICER:  Good morning, Your Honor.

16     Natasha Spriggs with Pretrial.

17               THE COURT:  Okay.  Good morning.

18               So I've gotten your -- well, first of all, any

19     objection, Mr. Howard, to proceeding via Zoom for this

20     matter as opposed to in person?

21               MR. HOWARD:  No objection, Your Honor.

22               THE COURT:  Thank you.

23               All right.  So I've gotten the pretrial report.

24     Ms. Spriggs, any updates since that was filed on May 11th?

25               THE PROBATION OFFICER:  Your Honor, Court's

```
 1    indulgence.  I am pulling him up as we speak --
 2                THE COURT:  All right.
 3                THE PROBATION OFFICER:  -- so that I can get the
 4    latest information.
 5                THE COURT:  Okay.
 6                (Brief pause.)
 7                THE PROBATION OFFICER:  Your Honor, there hasn't
 8    been any new information since his release on the new charge
 9    according to the courtesy supervising officer who is in the
10    Middle District of Florida.
11                THE COURT:  Okay.  And how often is he supposed to
12    report via telephone?
13                THE PROBATION OFFICER:  He's supposed to report
14    every month.
15                THE COURT:  Okay.
16                THE DEFENDANT:  Once every week.
17                THE PROBATION OFFICER:  Once every week.  I'm
18    sorry.  Once every week.
19                THE COURT:  Okay.  All right.  So this says his
20    last report was on the 3rd of May.  And so you're saying
21    that he missed a report?
22                THE DEFENDANT:  No, I made it.
23                THE COURT:  Okay.  So what -- is there a specific
24    day of the week, Mr. Johnson, that you report?
25                THE DEFENDANT:  Yep.  Every Wednesday.
```

 1                THE COURT:  Okay.  And so you made the one on

 2       the 10th, you're saying?

 3                THE DEFENDANT:  Yep.

 4                THE COURT:  The -- all right.  So Mr. Howard, you

 5       know, the -- sort of, an interesting situation here.  I

 6       mean, on plus side for -- your client is charged with

 7       misdemeanors which -- so not felony charges.  On the other

 8       hand, I can't say that his compliance has been so good so

 9       far.  So do you want to address the violation report and the

10       Government's motion.

11                MR. HOWARD:  Yes, Your Honor.  I would, however,

12       like to begin on a different topic which is that I think the

13       very last directive the Court gave me at our last status was

14       to enter my appearance which has not yet been done.  And I'm

15       not quite sure to -- the extent to which the Court is

16       apprised of the circumstances underlying that failure, but

17       I'd like to put it on the record.

18                THE COURT:  Okay.  Yeah.  Right.  Yes.  So you --

19       that's actually a very important preliminary issue.  So --

20                MR. HOWARD:  Right.

21                THE COURT:  So if you want to --

22                MR. HOWARD:  Right.

23                THE COURT:  -- explain that further.

24                MR. HOWARD:  What is occurring -- I am a Florida

25       barred attorney and I was a member of the D.C. Circuit --

1    D.C. District Court bar at the time I was a Federal Public

2    Defender there some years ago.  And in an effort to make my

3    appearance, I had contacted my former boss, A.J. Kramer, who

4    vouched for me, or whatever it is that you call that, and

5    made an application.  It sat there, and we were confused as

6    to why it wasn't being authorized and called and learned

7    that there is a certain window of time during which those

8    admissions are done and that it had passed for the month of

9    May and the day on which they can admit me is June the 5th

10   and they recommended that I do a pro hac vice instead, but

11   investigating that option it became apparent that I would

12   need local counsel.  I didn't think I had the authority to

13   engage somebody locally on a CJA appointment.  So I figured

14   it would be best that I wait until June 5th.

15          THE COURT:  Right.  But I think that you just need

16   a local -- not for everything, but just to get you admitted,

17   I believe.

18          MR. HOWARD:  I was told that they would be

19   responsible on the docket for -- which, I guess, is the

20   typical protocol.  I wouldn't need them to be, but --

21          THE COURT:  Right.  I don't think so.  I think

22   we've -- well, I'll take a quick look for a minute at the

23   rule so we can get this figured out.

24          MR. HOWARD:  To the extent that the Court would be

25   okay with waiting until June the 5th -- which is not too far

1    around the corner -- that would be fine with me.

2             THE COURT:  Yeah.  No, I appreciate that, but not

3    with regard to the violations.  I'm --

4             MR. HOWARD:  Certainly.

5             THE COURT:  I don't want to wait there.  So I'm

6    going to try to pull up the rule.

7             THE DEPUTY CLERK:  Your Honor, do you want me to

8    see if I can get Ms. Peterson on again in case there's any

9    issues with the hearing -- with him appearing today?

10             THE COURT:  Not yet.  Let me just -- although we

11   are going to need somebody to move his pro hac anyway.  So

12   sure.  Why not?

13             THE DEPUTY CLERK:  We attempted -- I believe his

14   secretary called me this week.  We attempted to see if

15   someone from our public defender could do that and we were

16   told that they could not.

17             MR. HOWARD:  And I know lawyers in D.C.  So to the

18   extent that the Court authorizes me to go about it in that

19   fashion, I would be able to do so quickly.

20             THE COURT:  Great.

21             (Brief pause.)

22             MR. HOWARD:  Or, maybe, even do so pending the

23   June 5th admission.

24             THE COURT:  Right.  I'm just looking at the rule.

25             MR. HOWARD:  Certainly.

1          (Brief pause.)

2          THE COURT:  Yeah, there's no requirement.  They

3    need to -- Local Rule 44.1(d) -- should be (2), but it's

4    labeled (3) -- that there needs to be a motion and then --

5    but you don't need other -- that person need not be

6    appearing otherwise.

7          MR. HOWARD:  Okay.  I'll look about that today,

8    sir.

9          THE COURT:  Okay.  Great.  Thank you.

10          All right.  So if you want -- let's see.  Well,

11    I'll let you appear today for -- pro hac for this motion --

12    for this hearing only, and then you can get admitted pro hac

13    for the case, if you wish, or depending on when the next

14    hearing is, you can be admitted to the Bar on June 5th.

15    Okay?

16          MR. HOWARD:  Thank you, sir.

17          THE COURT:  All right.  Thanks for raising that.

18          Now, go ahead, Mr. Howard, on the substantive --

19          MR. HOWARD:  With regard to the substantive issue,

20    the Court is correct in observing that the gravity of the

21    offenses with which Mr. Johnson's charged and his new

22    arrests would not be that which causes the most concern, but

23    I have reviewed the Government's motion to revoke release

24    and seek detention.  And with respect to the motion -- the

25    other reasons advanced for the Government's petition, my

1    understanding is that the Government has not yet done a

2    metadata -- and they're in the process of seeking to do

3    so -- review of the photographs that were posted.  My -- I

4    have reason to believe that those photographs predate his

5    release.  And so while posting them may have been

6    provocative and ill-advised, I do not think they constitute

7    a violation, and that the possession of the firearms that

8    the photographs tend -- depict would not have occurred

9    during the time that he was on release conditions with

10    respect to this case.  And I'd like time to try and confirm

11    that, but I have received information so far that leads me

12    to believe that might be the case.

13          THE COURT:  Okay.  So now, how about -- I guess

14    he's indicating that he has been reporting by phone as

15    required.  Do you want to address the new arrest?

16          MR. HOWARD:  Well, I -- the new arrest, I believe,

17    from what I have been able to glean, concerns primarily --

18    well, two issues: one, driving on a suspended license which

19    would be something that I would have him seek to address

20    urgently; and also, I think there was some substantive --

21    substances that -- controlled substances detected in his

22    car.

23          THE COURT:  Right, the cyclobenzaprine.

24          MR. HOWARD:  Which is, I believe, muscle relaxers

25    which are --

1          THE COURT:  Right.

2          MR. HOWARD:  I mean, I'm glad we're not talking

3   fentanyl, cocaine, or anything of the sort, but I understand

4   that a violation of the law is a violation of the law and

5   that it would raise concerns for the Court; however, given

6   the fact that the underlying charges here are themselves

7   misdemeanors and that it would take some time for this case

8   to be tried -- which is Mr. Johnson's current intention, I

9   think -- it would be a little bit onerous for him to be

10  detained pretrial on the basis of that which he is alleged

11  to have done concerning his new arrest.  I would ask that

12  the Court consider an admonishment and whatever other

13  restrictions it deems appropriate that would allow him to

14  continue to be released.  He is the single father of a son

15  who, admittedly, is 21 years old but is completely dependent

16  on his father at this time.

17         THE COURT:  Is he working?

18         MR. HOWARD:  He is working.  I do not -- and I'll

19  let him address this directly, but my understanding is he

20  works.  He is not employed on a 9:00 to 5:00, but he makes

21  income otherwise.

22         THE COURT:  All right.  So Mr. Johnson, what are

23  you doing for employment?

24         THE DEFENDANT:  Remodeling, flooring, painting,

25  working in a 55-and-up neighborhood down here.

```
 1              THE COURT:  And so that's -- and you're paid by --
 2    their contractor's paying you?  Is this, sort of, a
 3    day-to- -- day-by-day, you get a --
 4              THE DEFENDANT:  Well, homeowners --
 5              THE COURT:  Day labor?  Sorry?
 6              THE DEFENDANT:  I came down for Hurricane Ian
 7    relief and I volunteered about a month and it led to some
 8    work here.  So I decided to reside here.
 9              MR. HOWARD:  I think the judge inquired who's
10    paying you.  You said homeowners themselves?
11              THE DEFENDANT:  Yeah, the homeowners.
12              THE COURT:  So it's, sort of, day labor?  Is that
13    essentially what you're doing?
14              THE DEFENDANT:  Just self-employed contracting.
15              THE COURT:  And then where -- so where are you
16    living?
17              THE DEFENDANT:  125 Pier B in Naples.
18              THE COURT:  So -- but is that the residence
19    where -- look at the -- there seemed to be a residence that
20    was almost a squatting situation at least according to the
21    report.  Is that where you're living?
22              THE DEFENDANT:  No, there's -- there wasn't a
23    squatting --
24              THE COURT:  So it says -- right.  So 125 Pier B,
25    Ms. Spriggs, it says the home appeared to be vacant and
```

```
 1    abandoned.  The defendant enters --

 2              THE DEFENDANT:  Yeah, it's currently being fixed

 3    up.  I have a deal with the homeowner, which is my friend's

 4    father, to fix it up.  There's no cold water, I get one

 5    electrical outlet, and I'm able to stay in it while I work

 6    on it.

 7              THE COURT:  Is that with the agreement of the

 8    homeowner?

 9              THE DEFENDANT:  Yeah.

10              THE COURT:  Okay.

11              MS. MUMMA:  Your Honor, if I may add one point to

12    that situation?

13              THE COURT:  Sure.  Yes.

14              MS. MUMMA:  Based on my understanding from the

15    Florida pretrial officer, he's not -- he does not have

16    permission from the community to be there.  So he has

17    admitted to the officer that he's been going in at about

18    9:30 p.m. and then departing early in the morning so he's

19    not detected.  So I would consider that a squatting

20    situation, whether or not he has permission from the owner

21    or not which we have no evidence of, nor does Pretrial.

22              THE COURT:  Uh-huh.  Mr. Johnson, do you want to

23    respond to that?

24              THE DEFENDANT:  I mean, does the Court not want me

25    to stay there?  I can sleep --
```

1          THE COURT:  I'm not telling you where you should

2    or shouldn't stay.  I'm just asking if this is -- I mean,

3    I --

4          MR. HOWARD:  Your Honor --

5          THE COURT:  Yeah, Mr. Howard.  Go ahead,

6    Mr. Howard.

7          MR. HOWARD:  I'd like to interject.  To the extent

8    that he is living in the residence with the permission of

9    the owner, then I would think it doesn't constitute

10   squatting.  To the extent that the owner of that property

11   has not gotten permission from the community for him to live

12   there, that would be a dereliction by the owner.  But I

13   would like -- I would seek for it to be addressed and like

14   an opportunity to do so.

15         THE COURT:  I mean, that's certainly not an

16   unreasonable --

17         THE DEFENDANT:  There's a board that --

18         MR. HOWARD:  Wait a second.  Andrew, wait.

19         THE COURT:  Okay.  Right.  So I don't know -- I

20   mean, I -- I mean, Ms. Mumma, I -- there may be community

21   violations that he's engaging in, but it's -- but as

22   Mr. Howard points out, it's not squatting if the homeowner

23   is permitting it.  So it's not an unauthorized entry.  There

24   may be --

25         MS. MUMMA:  I understand, Your Honor, but I would

1    also, again, highlight that he told the pretrial service

2    officer in Florida that he would give him evidence that the

3    owner had given him permission to be there, and he has yet

4    to do so, and that was two weeks ago.

5              THE DEFENDANT:  No, I gave --

6              THE PROBATION OFFICER:  Your Honor --

7              THE COURT:  Yes?

8              THE PROBATION OFFICER:  -- if I may?

9              THE COURT:  Go ahead.

10             THE PROBATION OFFICER:  This is Pretrial.

11             THE COURT:  Yeah.

12             THE PROBATION OFFICER:  I think the concern that

13   PSA and AUSA Mumma have is that PSA is unable to verify the

14   address, and that's one of the main conditions in order to

15   be in good standing for Pretrial.  Mr. Andrews [sic] has

16   stated that he resided at the address, and the pretrial

17   officer from Middle District of Florida cannot verify that.

18   Furthermore, it's a 55-and-over community.  Another concern

19   is that at the time of the new arrest, he stated that he was

20   homeless.  So I guess we're just trying to connect the dots

21   here.  And this is something that is verified.  So to the --

22   on the new arrest itself, it stated the address was

23   homeless.  This is what I have received from the actual --

24   I'm sorry, Your Honor -- matter at the new arrest.  So this

25   is not something that we're just pulling from the sky.  This

1    is documented.

2              THE DEFENDANT:  Documented --

3              THE COURT:  I -- okay.  I understand that.

4              Now, let me ask -- Ms. Mumma, do you want to

5    respond to Mr. Howard's point about the weapons?  Is it --

6    do -- what -- the argument -- so your point is that he's

7    posted these photographs after -- while the restriction has

8    been imposed, and Mr. Howard's point is it may be

9    ill-advised, but it's not in violation; that the photographs

10   were actually taken prior to the restriction since he

11   wouldn't have violated it by possessing.  And do you have

12   any -- do you want to respond to that?

13             MS. MUMMA:  Yes, Your Honor.  Mr. Howard is

14   correct that we are still in the process of confirming the

15   metadata behind the photos.  I will trust Mr. Howard's

16   position that he has evidence that the photos were taken

17   prior to Mr. Johnson being on these release conditions.

18             MR. HOWARD:  Let me just interject.  I have reason

19   to believe, but I have not confirmed it.  I don't want to

20   mis- --

21             MS. MUMMA:  Okay.  We don't doubt that at all.  We

22   brought this up in the motion because we felt at the time

23   that we filed that we had clear and -- at least clear and

24   convincing evidence based on Mr. Johnson's own statements in

25   the -- like, connecting to the photographs that he had this

1    gun in his possession while he was on pretrial release.  If

2    that was a joke; if that was a way to try to trick the

3    Government in some way, fine.  We will accept that.  We

4    still think that that -- those posts show an utter disregard

5    for the Court and for these proceedings, and I think there's

6    still evidence that he will be unlikely to comply with

7    conditions in the future.

8              THE DEFENDANT:  Your Honor, can I respond to that?

9              THE COURT:  No.  That's why you've got a lawyer.

10   But what I will say to you is that at the least --

11   Mr. Howard is right.  At the least, it's ill-advised.  At

12   the least, it's not making me terribly sympathetic to your

13   position when we're trying -- when I'm trying to decide

14   what's appropriate in terms of whether you will violate

15   Court orders and whether you will comply.  Do you understand

16   how I might take that position?

17             MR. HOWARD:  He understands.

18             THE DEFENDANT:  I do understand why you would see

19   it that way, yeah.

20             THE COURT:  Okay.  So you might keep that well in

21   mind going forward.

22             All right.  I'm going to deny the motion to revoke

23   at this point.  Certainly, the Government has -- it's not --

24   it's a far-from-unreasonable request, and I think that if

25   this were a felony case I might be more inclined to do it,

 1  but I am concerned, as Ms. Howard -- Mr. Howard points out,

 2  with jailing someone for longer than they might ultimately

 3  receive in the charge now.

 4          So Mr. Johnson, but you need understand that this

 5  is not a license to do whatever you want because you're

 6  facing misdemeanors.  If I believe you're continuing to

 7  violate, I need to find other conditions that will ensure

 8  compliance, and those conditions may include incarceration.

 9  Do you understand that?

10          THE DEFENDANT:  I do.

11          THE COURT:  All right.  So Mr. Howard, next

12  question.  We had to set this for May 17th for a status

13  today regardless of the violation.  Do you want to tell me

14  where things stand on the underlying case?

15          MR. HOWARD:  Well, because of my inability to get

16  a notice filed, the Government has not produced discovery

17  which is, of course, understandable.  With, (inaudible) --

18  whatever preparation and getting up to speed that I have

19  been able to do absent discovery which, essentially,

20  involves conferences with Mr. Johnson, we have been in

21  contact quite a bit and Mr. Johnson is eager to resolve the

22  case and is in communication with me the instant that I

23  make -- that I reach out to him.  As a matter of fact, he

24  reaches out to me more than I him.  So I would -- I'm not

25  sure how much time because I don't know the volume of

1    discovery because I haven't received it yet, but I would,

2    maybe, suggest if I could have an opportunity to make this

3    pro hac vice motion and enter an appearance that way pending

4    at least the June 5th admission and get the discovery in my

5    hands and, maybe, submit some sort of written report to the

6    Court with my impressions, given the volume of discovery and

7    what it would, then, occur to me needs to be done to prepare

8    for trial.  I will say --

9              THE COURT:  I don't require that.  I mean, maybe,

10   what we should -- why don't we set this for, say, 30 days.

11   I'm hoping, Mr. Howard, that you can get in via pro hac very

12   quickly and get that discovery, then, quickly and then

13   review it and talk to your client and have a decent sense in

14   30 days of whether this is headed toward trial or toward a

15   plea.

16             MR. HOWARD:  Okay.

17             THE COURT:  How does that sound?

18             MR. HOWARD:  That sounds great, Your Honor.  I

19   appreciate that.  I do want to alert the Court to -- I'm not

20   sure I did last time because I'm not sure it happened the

21   last time, but we -- I -- there is a death penalty trial

22   that I'm engaged in and we were anticipating being set

23   sometime in June or July and the judge said we're picking a

24   jury in an hour.  And so I've been engaged in that and the

25   days that I have off are Fridays, and this trial is

1   anticipated to last through early August.  And so I didn't

2   want the Court to be blind-sided by my schedule.  But if we

3   set any future statuses, I would request that they be on a

4   Friday so that I'm available.  And I just wanted to alert

5   the Court to that --

6               THE COURT:  Thank you.  Great.  Was that -- so

7   how -- so June 16th is a Friday, Mr. Howard.  And do you

8   prefer morning or afternoon?

9               MR. HOWARD:  Afternoons work better.

10              THE COURT:  Okay.  Could we do 2:00 o'clock,

11  Mr. Howard, on June 16th?

12              MR. HOWARD:  Yes, sir.  We can.  Thank you.

13              THE COURT:  Ms. Mumma, that work for you?

14              MS. MUMMA:  Yes, Your Honor.

15              THE COURT:  Okay.  Any objection to excluding the

16  time, Mr. Howard?

17              MR. HOWARD:  No objection.

18              THE COURT:  All right.  I find it is in the

19  interests of justice to do so between today and June 16th

20  under the Speedy Trial Act so that defense counsel may

21  formally appear and receive discovery.

22              All right.  So Mr. Johnson, I'm going to leave you

23  on to the -- on release under the conditions that remain.

24  Again, I -- you need to continue to be compliant with

25  Pretrial.  You may express whatever views you wish, but

```
 1    whether you put "this is art" or not, if you're possessing
 2    any weapon or -- as I said, for art or otherwise, that would
 3    be a violation that I'll take seriously.  Do you understand
 4    that?
 5              THE DEFENDANT:  Yes, Your Honor.
 6              THE COURT:  Ms. Mumma, anything else from the
 7    Government today?
 8              MS. MUMMA:  No, Your Honor.  Thank you.
 9              THE COURT:  Defense?
10              MR. HOWARD:  Thank you for your courtesy, Judge.
11    Nothing further.
12              THE COURT:  All right.  Thank you, all.  Look
13    forward to seeing you in a few weeks.  Thank you.
14              MR. HOWARD:  Okay.
15              THE DEPUTY CLERK:  This Honorable Court is
16    adjourned.  Thank you, all.
17              (Proceedings concluded at 11:35 a.m.)
18              *  *  *  *  *  *  *  *  *  *  *  *
19         CERTIFICATE OF OFFICIAL COURT REPORTER
20    I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify
21    that the above and foregoing constitutes a true and accurate
22    transcript of my stenographic notes and is a full, true and
23    complete transcript of the proceedings to the best of my
24    ability, dated this 5th day of February 2025.
25                        /s/Timothy R. Miller, RPR, CRR, NJ-CCR
                          Official Court Reporter
```

United States Courthouse
Room 6722
333 Constitution Avenue, NW
Washington, DC 20001